NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID KWIATKOWSKI, et al., | |
| Plaintiffs, | |
| v. | |
| | CIVIL NO. 01-6145 (GEB) |
| DONALD DE FRANCESCO, et al., | |
| Defendants. | **MEMORANDUM OPINION** |

**BROWN, Chief United States District Judge**

These matters come before the Court upon Motion by Defendants Mary E. Sunder, Anita Clark, Teryl Torres, Gabriel Spiler, Vibha Prasad, Rosanne Pingitore and Patricia Bluestone, Division of Youth and Family Services caseworkers and supervisors (hereinafter "Defendants") for Summary Judgment pursuant to Fed. R. Civ. P. 56 [Docket Entry # 41] and a Cross-Motion by Plaintiff David Kwiatkowski[1] to Amend the Complaint pursuant to Fed. R. Civ. P. 15(a) as contained in their opposition to Defendants' Summary Judgment Motion [Docket Entry # 44]. The Court, having considered the parties' submissions and having decided these matters without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons discussed below, will grant Defendants' Motions for Summary Judgment and moot Plaintiff's Cross-Motion to Amend the Complaint.

---

[1] Plaintiff A.K. reached a settlement with Defendants on or about August 8, 2006 and is no longer a party to the action.

I.      **BACKGROUND**

A.      **Procedural**

On December 27, 2001, Plaintiff David Kwiatkowski, individually and on behalf of A.K.,

his then-minor daughter (hereinafter "Plaintiff") commenced this civil action.  Plaintiff's eleven-

count Amended Complaint seeks recovery pursuant to 42 U.S.C. §§ 1983 and 1988 for violations

of constitutional, statutory and state law rights.  Service was effectuated upon Defendants[2], an

effort that extended for more than a year.  On July 2, 2003, all Defendants, including previously

named Defendants James E. McGreevey, Michele K. Guhl, Charles Venti, and the Division of

Youth and Family Services of New Jersey (hereinafter "DYFS") filed a motion to dismiss.  On

April 19, 2004, the Honorable John C. Lifland, then United States District Judge for the instant

action, filed an Opinion and Order dismissing James E. McGreevey, Michele K. Guhl, Charles

Venti, and DYFS as Defendants.  The motion was denied with respect to the remaining

Defendants, except for the claims brought under 42 U.S.C. § 671(a)(15), which were granted.

Discovery was thereafter conducted.  The instant motion for summary judgment was filed on

April 27, 2006.

B.      **Factual**

Plaintiff David Kwiatkowski is the father of A.K.  On June 6, 1995, Doreen

Kwiatkowski, A.K.'s aunt, received a call from A.K. who alleged that her mother, Jenna

Kwiatkowski, had kicked A.K. and pulled her hair.  (Amended Complaint, ¶ 16).  Court action

---

[2] Defendants argue that Ms. Clark was never served and did not execute a waiver of service and that as such, she is not a party to the civil action.  However, Anita Clark has been included in the instant summary judgment motion and the previous motion to dismiss.  She is also represented by counsel.  As both parties continue to refer to Ms. Clark as a defendant in this action, the Court will include her in Its analysis.

was thereafter taken, and DYFS was awarded custody.  (Id.).  A.K. remained in the custody of

the aunt until July 17, 1995, when the aunt returned A.K. to her parents care, allegedly in

violation of a court order prohibiting her return.  (Id. at ¶ 17).  DYFS gained physical custody of

A.K. in January 1996, after another incident in which her mother had been arrested "for being

drunk."  (Id. at ¶ 18).

Over the course of the next six years, from 1996 to at least 2002, A.K. went through

multiple placements.  (Defendants' Brief, p. 4).  These placements allegedly occurred without

full and fair hearings and without legal counsel for A.K.  (Amended Complaint, ¶¶ 21-23).

Throughout the course of the six year period of DYFS custody, several different DYFS

workers were assigned to A.K.  (Defendants' Brief).  Initially, the DYFS case regarding A.K. was

assigned to Defendants Clark and Sunder, and supervised by Defendant Pingitore.  (Id. at p. 4).

However, on September 1, 1995, Defendant Gabriel Spiler supervised a visit between Plaintiff

and A.K. at the Howell District Office.  (Id.).  During the visit, a physical altercation occurred

between Plaintiff and Defendant Spiler.  (Id.).  Plaintiff was arrested on September 1, 1995, and

charged with assault on Defendant Spiler.  (Id.).  Plaintiff subsequently filed a criminal complaint

against Defendant Spiler alleging assault.  (Id.).  On April 1, 1996, both Defendant Spiler and

Plaintiff appeared in Howell Municipal Court and agreed to dismiss the charges against each

other.  (Id.).

Thereafter, Plaintiff contends that while under DYFS' care and custody, A.K. was

neglected and not properly supervised, sexually abused and injured by another minor, physically

abused by an employee, and placed in a mental hospital without a court order or civil

commitment hearing.  (Amended Complaint).

## II.      SUMMARY JUDGMENT STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Orson, Inc. v. Miramax Film Corp.</u>, 79 F.3d 1358, 1366 (3d Cir. 1996); <u>Healy v. New York Like Ins. Co.</u>, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), <u>cert.</u> <u>denied</u>, 490 U.S. 1098 (1989); <u>Hersh v. Allen Prod. Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  <u>See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  <u>Anderson</u>, 477 U.S. at 255-56.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id., "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586, n.12; see also Anderson, 477 U.S. at 247-48 ("[B]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324: see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the 'mere scintilla' threshold.), cert. denied, 507 U.S. 912 (1993).  Here, the material facts are undisputed, and thus, the matter is ripe for summary judgment.

III.    ANALYSIS

    A.    Statute of Limitations Bars Plaintiff's Claims

Defendants assert that Plaintiff's claims are barred under the applicable statute of limitations. Plaintiff's argue that the statute of limitations does not take into account the unreasonableness of suing in federal court "the very agency in whose custody she [A.K.] was held, for fear of retribution." (Plaintiff's Brief, p. 16).

In Wilson v. Garcia, the United States Supreme Court held that the statute of limitations applicable to civil rights actions filed pursuant to 42 U.S.C. § 1983 is the state statute which limits actions for personal injury torts. 471 U.S. 261, 275-76 (1985). Thereafter, in Cito v. Bridgewater Twp. Police Dep't, the Third Circuit declared that civil rights actions filed pursuant to 42 U.S.C. § 1983 were subject to New Jersey's two-year statute of limitations period on personal injury actions. See 892 F.2d 23, 25 (3d Cir. 1989); see also Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (citation omitted). Thus, pursuant to N.J.S.A. § 2A:14-2 and relevant case law, Plaintiff's claims are subject to New Jersey's two-year statute of limitations.

"Federal law which governs the accrual of section 1983 claims establishes that the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Id. (citations omitted). The limitations period for the filing of Plaintiff's claims thus began to accrue on or about June 6, 2005, the time that Plaintiff asserts in his Amended Complaint that DYFS first obtained custody of A.K. As previously identified, Plaintiff did not file this action until December 27, 2001 - over five and one-half years beyond the injury date and three and one-half years after Plaintiff's claims

accrued.  Therefore, Plaintiff is barred by the two-year statute of limitations from filing this
action, and all claims asserted by said Plaintiff shall be dismissed.

     **B.**     **Plaintiff's Claims Barred by the Rooker-Feldman Doctrine**

     Even assuming that Plaintiff's claims are not barred by the applicable statute of
limitations, they are nevertheless prohibited under the Rooker-Feldman doctrine as they are either
a direct challenge to the various state court decisions or so intertwined with the issues actually
litigated and adjudicated in state court as to prohibit federal consideration.

     Under 28 U.S.C. § 1257, a district court may not directly review the decisions of a state
court.  See Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of
Appeals v. Feldman, 460 U.S. 462, 482 (1983); Guarino v. Larsen, 11 F.3d 1151, 1156-57 (3d
Cir. 1993); Port Auth. Police Benev. Ass'n v. Port Auth., 973 F.2d 169, 178 (3d Cir. 1992).  To
determine when a litigant seeks direct review of a state court decision, federal courts must look to
the Rooker-Feldman doctrine.  Under this doctrine, a district court "cannot entertain
constitutional claims that have been previously adjudicated in state court or that are inextricably
intertwined with such a state adjudication."  Gulla v. North Strabane Township, 146 F.3d 168,
171 (3d Cir. 1998) (citing FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834,
840 (3d Cir. 1996); Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992)).  The Rooker-Feldman
doctrine bars federal claims when the requested relief in the district court would essentially
"reverse the state court decision or void its ruling."  Gulla, 146 F.3d at 171 (quoting FOCUS, 75
F.3d at 840).  In Gulla, the Third Circuit explained that the test:

> to determine whether the Rooker-Feldman bars [plaintiff's] federal suit requires
> determining exactly what the state court held . . . If the relief requested in the federal
> action requires determining that the state court's decision is wrong or would void the state
> court's ruling then the issues are inextricably intertwined and the district court has no

subject matter jurisdiction to hear the suit.

Id. (quoting FOCUS, 75 F.3d at 840).  The first step, therefore, to determine the applicability of the Rooker-Feldman doctrine is to ascertain "exactly what the state court held."  Id. (quoting FOCUS, 75 F.3d at 840).

In the underlying DYFS matter, the state court had numerous proceedings regarding A.K., far too numerous in fact to present in detail.  Throughout the proceedings, the state courts made findings of instability in the home, with regards to both A.K.'s mother and father, including significant arrest records and substance abuse, as well as domestic violence.  The courts further found that it would not be in A.K.'s best interests to remain with her parents.  At all relevant times, Plaintiff had legal representation.

In the instant action, Plaintiff asserts federal constitutional violations under §§ 1983 and 1988, including procedural due process, equal protection, right to privacy and right to life, liberty and the pursuit of happiness.  Plaintiff further asserts state law violations including violations of the Child Welfare Act, and tort claims of malicious prosecution and harassment and intimidation.  However, each of these claims are a direct result of the actions taken by DYFS and the state courts.  Therefore, each of these claims are so inextricably intertwined with the state court proceedings that federal review is precluded as it would be tantamount to appellate review of state court determinations.

Plaintiff argues that no federal claims were "actually" litigated in state court.  However, that argument is greatly diminished if not eliminated in its entirety when the Court considers all of the failed but most certainly realistic opportunities Plaintiff had to assert these arguments during A.K.'s six-year removal from home.  See Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.

1992) (holding that a party cannot escape Rooker-Feldman by raising a new constitutional theory in federal court unless the party lacked a realistic opportunity to fully and fairly litigate the constitutional claim in the state court proceeding).

As such, this Court is required under the Rooker-Feldman doctrine to dismiss Plaintiff's claims in their entirety.

### C.   Plaintiff's Motion for a Third-Amended Complaint is Moot

Plaintiff moves in their opposition brief to Defendants' Motion for Summary Judgment to file a Third-Amended Complaint to substitute Youth Counseling Services, Cheryl Kitrell and Andrew Horton for previously named fictitious defendants.  Plaintiff asserts that these proposed defendants are liable to A.K., a liability that was discovered in 2005 during review of document production by DYFS in which additional incidents of injury to A.K. were allegedly revealed.

At the time Plaintiffs filed their opposition brief, A.K. was still an active participant in the litigation.  However, on August 8, 2006, Plaintiff A.K. and Defendants reached an accord and entered a Stipulation of Settlement.  Therefore, A.K.'s settlement moots the pending Motion to Amend, as the amendments that are sought relate only to her.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED, Plaintiff's Motion to Amend is MOOT and this civil action is terminated.

s/Garrett E. Brown, Jr.
**HONORABLE GARRETT E. BROWN, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

Dated:   August 10, 2006

-9-